UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | Case No. 2:15-cr-00116-LDG-NJK |
| Plaintiff,  ) | |
| ) | ORDER AND |
| vs.  ) | REPORT & RECOMMENDATION |
| ) | |
| ALEJANDRO MENDOZA,  ) | |
| ) | (Docket No. 26) |
| Defendant.  ) | |
| ) | |

This matter was referred to the undersigned Magistrate Judge on Defendant's Motion to Suppress Evidence. Docket No. 26. The Court has considered Defendant's Motion, the United States' Response, and Defendant's Reply. Docket Nos. 26, 34, 36.

**I.    BACKGROUND[1]**

On February 10, 2015, at approximately 10:44 p.m., Las Vegas Metropolitan Police Department (LVMPD) Officer A. Hee, while driving in a marked patrol vehicle, observed a black Range Rover with very dark window tint travelling on Las Vegas Boulevard. Docket No. 26 at 16. Officer Hee ran a records check and determined that the driver's license of the registered owner of the vehicle, Defendant Alejandro Mendoza, had been suspended. *Id*. Officer Hee therefore conducted a stop of the vehicle. *Id*.

When Officer Hee approached the driver's side of the vehicle, he immediately noticed the strong odor of marajuana emanating from inside the vehicle. *Id*. Defendant, the driver of the vehicle, identified himself and produced a Nevada driver's license. *Id*. Officer Hee called for backup and asked both Defendant and his passenger - Jasmine Velez - to exit the vehicle. *Id*.

---

[1] Both parties relied upon the the police report, telephonic search warrant, statement, Miranda card, and body camera video for their recitation of facts. *See* Docket Nos. 26. 34. The Court therefore derives its factual background from the same sources.

1    When LVMPD Officer G. Jackson arrived on scene as backup, Officer Hee conducted a search of the vehicle, due to the strong smell of marijuana coming from inside. *Id*. Under the driver's seat, Officer Hee located a heavy cloth bag that contained twelve .45 caliber ammunition rounds. *Id*. He also found a small plastic container which had a green leafy residue on it, as well as two small plastic straws with white powder. The container had a marijuana logo on the label, and Officer Hee believed that the white powder residue on the straws was consistent with an intrument used to snort powder cocaine. *Id*.

Officer Hee requested assistance from a K9 officer for a sniff to locate any hidden narcotics in the vehicle. *Id*. LVMPD K9 Officer D. Newton responded to Officer Hee's request and, after sniffing the vehicle, his K9 partner alerted on the center console near the cup holder. *Id*. Under the cup holder, concealed inside the console, Officer Newton located a silver and black revolver. *Id*. By this time, officers had conducted a records check of Defendant and learned that he is a convicted felon. *Id*. The officers did not manipulate the firearm, and left it inside the center console. *Id*. Officer Hee contacted the Firearms Investigation Unit to assist in the investigation. *Id*.

Officer Jackson advised Defendant of his *Miranda* rights. *Id*. Officer Jackson read the rights off a card. Body cam video Pt1, beginning at 18:14. Officer Jackson said, "You have the right to remain silent. Anything you say can be used against you in a court of law. You have the right to the presence of an attorney. If you cannot afford an attorney, one will be appointed before questioning. Do you understand these rights?" *Id*. at 18:19 - 18:27. Defendant stated that he understood his rights and agreed to speak with Officer Jackson. Docket No. 26 at 16. He admitted that he was a convicted felon and that he had had a gun in his car earlier, but stated that no gun was currently in the vehicle. *Id*. Defendant did admit to possessing the ammunition. *Id*.

LVMPD Firearms Investigations Unit Detective B. Hodson responded to the scene and was briefed on what had occurred. *Id*. He drafted a telephonic search warrant, which was granted by a Nevada judge. *Id.* at 16, 19-26. The warrant authorized Detective Hodson to search Defendant's vehicle for any and all firearms, including the one found in the center console; all firearm-related accessories such as holsters, magazines and ammunition; illegal narcotics; cells from Defendant's mouth via buccal swab; articles of personal property that would establish the identity of persons in

- 2 -

control of the vehicle or specific areas of the vehicle; and items that would tend to show possessory interest in the items found, such as photographs. *Id*. at 20-21, 26. Pursuant to the warrant, Detective Hodson recovered the revolver from the center console of Defendant's vehicle, as well as Defendant's DNA cells via a buccal kit. *Id*. at 16. Photos of the vehicle and firearm were taken by officers. *Id*.

Beginning at approximately 1:35 a.m., Detective Hodson conducted a taped statement with Defendant in Detective Hodson's department vehicle. *Id*. at 16, 28-44. Detective Hodson identified himself to Defendant and confirmed that Defendant had been advised of his *Miranda* rights by another officer on the scene that night. *Id*. at 28-29. Detective Hodson asked Defendant if he wished to speak with him, and Defendant responded by saying that he "just had it for protection." *Id*. at 29. Defendant admitted that the vehicle was his and that he's the primary driver. *Id*. at 30. Defendant further stated that he has two felony convictions. *Id*. at 31, 43. When Detective Hodson asked Defendant how long he had had the gun, Defendant responded that he got it four months ago from a friend, that it was new out of the box, and that he paid $350 for it. *Id.* at 31-32. Defendant admitted that he normally keeps the weapon in the center console where it was located. *Id*. at 33.

Defendant admitted to smoking marijuana that night, and stated that "I almost passed out back there." *Id*. He further stated that he had "just a quarter bud" of marijuana, but "you know how weed smells so strong." *Id*. at 38. Defendant told Detective Hodson that, since he can't buy ammunition, his girlfriend bought the .45 caliber ammunition for him that was found in the vehicle thinking that it would fit the revolver. *Id*. at 34-35. Defendant said he needed the gun for protection because he has had a few incidents where people have shot at him. *Id*. at 35.

On April 22, 2015, a federal grand jury issued an indictment charging Defendant with one count of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2). On December 21, 2015, Defendant filed the instant motion to suppress evidence, asking the Court to suppress all evidence seized during the traffic stop and any statements he made following the traffic stop. Docket No. 26. Defendant also requests an evidentiary hearing. *Id*. at 1.

. . . .

## II. ANALYSIS

### A. Evidentiary Hearing

The United States Court of Appeals for the Ninth Circuit has held that an evidentiary hearing on a motion to suppress need only be held if the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the court to conclude that contested issues of material fact exist. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (*citing United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986); *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990); *United States v. Irwin*, 613 F.2d 1182, 1187 (9th Cir. 1980); *United States v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972) ("Evidentiary hearings need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that relief must be granted if the facts alleged are proved.")).

"A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required." *Howell*, 231 F.3d at 621 (*citing Harris*, 914 F.2d at 933). The determination of whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended by* 609 F.2d 433 (1979). Here, both parties relied upon the same reports and body cam video generated by LVMPD in presenting the facts. The court concludes there are no contested issues of fact that require an evidentiary hearing in this matter, and the court will therefore decide the motion on the moving and responsive papers.

### B. Motion to Suppress

#### 1. Traffic stop

Defendant submits that the traffic stop was illegal and that all evidence seized as a result of it should be suppressed. Docket No. 26. He contends that the arrest report is silent regarding Officer Hee's position in relation to Defendant's vehicle and, therefore, Officer Hee may not have been able to see the front windows of Defendant's vehicle. *Id*. at 6. Defendant further submits that, even if Officer Hee observed the front windows, he could not have realistically tried to visually estimate if the windows were too dark. *Id*. Finally, Defendant contends that, if his windows were too dark and

- 4 -

Officer Hee did not know who was driving the vehicle, he did not have reasonable suspicion to stop it in this instance. *Id*. at 5.

In response, the United States submits that, as stated in the arrest report, Officer Hee believed that Defendant's very dark window tinting violated NRS 484D.440. Docket No. 34 at 5. The United States submits that Officer Hee's belief was reasonable and, therefore, the stop was valid. *Id*. at 5. Further, the United States submits that, when Officer Hee learned that the registered owner of the vehicle had a suspended/revoked driver's license, he had a second valid reason to stop the vehicle. *Id*. at 6.

Defendant replies that a close review of Officer Hee's answers in the body cam video "reveals that he never actually said that he observed the front windows of the SUV before making the stop." Docket No. 36 at 2. Additionally, Officer Hee never said in the video that "he tried to look through the front windows to see who was driving before making the stop." *Id*. While Defendant concedes that Officer Hee gave the tinting and revoked license reasons for stopping Defendant's vehicle the night that he made the stop, "he discusses them in a somewhat vague and generalized manner." *Id*.

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)). In Fourth Amendment terms, a traffic stop entails a seizure of the driver "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653,(1979); *see also Whren v. United States*, 517 U.S. 806, 809-810 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]"). Even brief temporary detention of individuals for a limited purpose in a traffic stop constitutes a seizure for purposes of the Fourth Amendment. *See United States v. Martinez-Furerte*, 428, U.S. 543, 556 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir. 2000).

A decision to stop an automobile is reasonable where the police have probable cause to believe a traffic violation has occurred. *Whren*, 517 U.S. at 810. This is because the United States Supreme Court has made it clear that "[s]ubjective intentions play no role in ordinary, probable-cause, Fourth Amendment analysis." *Id*. at 813. Reasonableness is measured in objective terms by examinig the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 38-39 (1996). Here, the vehicle Defendant was driving was stopped violating both NRS §484D.440 and NRS §483.560.

NRS §484D.440 makes it unlawful to operate a motor vehicle with window tinting "which alters the color or reduces the light transmission of the windshield or side or rear window." NRS §484D.440 2. The statute provides for an exception if the "motor vehicle which has a windshield or windows that are covered by or treated with any material"... "was sold when new or could have been sold when new with such material as standard or optional equipment without violating any federal statute or regulation governing the sale at the time of manufacture." NRS §484D.440 5. Additionally, NRS §483.560 states, in relevant part, that "any person who drives a motor vehicle on a highway or on premises to which the public has access at a time when the person's driver's license has been cancelled, revoked or suspended is guilty of a misdemeanor."

In this case, the documents upon which the parties rely for the facts state that Defendant's car had very dark window tinting. Additionally, Officer Hee states on the body cam video that he stopped Defendant for the dark tint on his front windows. Therefore the Court finds that Officer Hee conducted a traffic stop based upon a violation of a valid Nevada statute.[2] As a result, the court finds that the traffic stop was based on probable cause, and therefore reasonable within the meaning of the Fourth Amendment.

**2.      Search of vehicle**

Defendant next contends that the warrantless search of his vehicle was illegal. Docket No. 26 at 7. Defendant submits that the sole basis for the search appears to be the strong odor of marijuana that Officer Hee reported smelling when he stopped the vehicle. *Id*. Defendant submits,

---

[2] Officer Hee had a second valid reason to stop Defendant based upon Officer Hee's inability to see the driver and his knowledge that the registered owner of the vehicle had a suspended/revoked driver's license. The Court, however, need not reach this reason as it finds that Officer Hee validly stopped Defendant's vehicle based upon his window tinting.

- 6 -

1  however, that the green leafy residue found inside a small, closed plastic container could not cause
2  such an overwhelming smell, and that no other marijuana was located during the search of the
3  vehicle. *Id*.

4        The United States responds that the search was legal because the odor of maijuana emanating
5  from Defendant's vehicle established sufficient probable cause to search it. Docket No. 34 at 7. The
6  United States submits that Officer Hee, when approaching Defendant's vehicle, smelled what he
7  immediately recognized as the strong odor of marijuana. *Id*. During the search of the vehicle, the
8  United States submits, items consistent with recent marijuana possession and usage were found. *Id*.
9  Finally, the United States points out that Defendant himself corroborates Officer Hee's observation.
10 Defendant told Detective Hodson that he smoked marijuana that night and "almost passed out back
11 there;" that he normally keeps his marijuana in the center console of his vehicle; that marijuana
12 "smells so strong," and "it hangs around forever." *Id*. at 7-8.

13       The Fourth Amendment of the Constitution of the United States prohibits unreasonable
14 searches and seizures. Searches conducted pursuant to a warrant issued on a finding of probable
15 cause generally may be considered reasonable. *Katz v. United States*, 389 U.S. 347, 356 (1967).
16 There are, however, exceptions, excusing the need for a warrant prior to conducting a search. The
17 Fourth Amendment does not require that police obtain a warrant to search an automobile when they
18 have probable cause to believe it contains contraband or evidence of criminal activity. *United States*
19 *v. Ross*, 456 U.S. 498, 804-09 (1982). *See also Chambers v. Maroney*, 399 U.S. 42, 44, 52 (1970)
20 (warrantless search of vehicle valid because police had probable cause to believe car contained
21 evidence of service station robbery when car matched eye-witnesses' descriptions); *Carroll v. United*
22 *States*, 267 U.S. 132, 153, 160, 162 (1925) (warrantless search of vehicle valid where police had
23 probable cause to believe vehicle contained contraband because defendants agreed to sell illegal
24 liquor to federal agent); *United States v. Henderson*, 241 F.3d 368, 648 (9th Cir. 2000) (warrantless
25 search valid because police had probable cause to believe luggage placed in car contained evidence
26 of bank robbery in which defendant was suspect).

27       Warrantless searches of automobiles under the automobile exception are allowed for two
28 reasons. First, the ready mobility of a motor vehicle makes it impracticable for law enforcement

officers to secure a search warrant. *California v. Carney*, 471 U.S. 386, 390-91 (1985). Second, individuals have a diminished expectation of privacy in motor vehicles because motor vehicles are subject to pervasive governmental regulation. *Id*. at 391. Once it is determined that probable cause exists to believe a vehicle contains contraband, a warrantless search of every part of that vehicle, and such contents as might conceal the object of the search, is justified. *Ross*, 456 U.S. at 825; *Wyoming v. Houghton*, 526 U.S. 295, 301 (1999). The odor of marijuana emanating from a vehicle creates sufficient probable cause to justify a warrantless search of the vehicle. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999); *United States v. Ojeda-Rodriguez*, 502 F.2d 560, 561 (9th Cir. 1974); *United States v. Barron*, 472 F.2d 1215, 1217 (9th Cir. 1973). *See also United States v. Parker*, 919 F.Supp.2d 1072, 1079 (E.D.Cal. 2013).

Here, the papers upon which both parties rely for their factual summary clearly show that an odor of marijuana emanated from the vehicle. Officer Hee stated that he smelled a strong odor of marijuana emanating from inside the vehicle as soon as he approached it. Defendant corroborated Officer Hee's observation when he told Detective Hodson that he had smoked marijuana that night, that he almost passed out, and that marijuana has a very strong smell that hangs around. Additionally, the fact that the drug dog alerted on the center console where Defendant admitted he regularly keeps his marijuana further corroborates Officer Hee's observation. The Court therefore finds that probable cause existed for the warrantless search of Defendant's vehicle. *See United States v. Phillips*, 9 F.Supp.3d 1130, 1137 (E.D.Cal. 2014) (vehicle initially detained for traffic stop; however, the smell of marijuana detected after the stop gave officers probable cause to search the defendant's vehicle without a warrant).

### 3. Statement

Defendant contends that the *Miranda* warnings given to him by Officer Jackson were deficient. Docket No. 26 at 8. He submits that Officer Jackson read the rights too quickly and fumbled some of the words. *Id*. Further, Defendant contends that Officer Jackson never advised him of his right to have an attorney present both before and during questioning and, therefore, the words used during the *Miranda* recitation do not meet the language required by law. *Id*. at 9. Additionally, Defendant contends that Detective Hodson should have given him a fresh Miranda warning before

1 speaking to him and that the prior warning, even if appropriately given, was stale at that time. *Id*.
2 at 10. Defendant therefore asks the Court to suppress all incriminating statements he gave to both
3 Officer Jackson and Detective Hodson. *Id*.

4 The United States responds that Officer Jackson read the *Miranda* warnings from his
5 LVMPD Custodial Interrogation card, and did not speak in a fast manner or fumble any words.
6 Docket No. 34 at 9-10. *See also* Docket No. 34-1 at 2. The United States submits that Defendant
7 responded that he understood his rights and spoke with Officer Jackson and that, when Detective
8 Hodson asked him later if he received his *Miranda* rights, he reponded that he had received them,
9 and willingly spoke with Detective Hodson. Docket No. 34 at 10. The United States therefore
10 contends that Defendant voluntarily spoke with both Officer Jackson and Detective Hodson. *Id*.
11 Regarding the rights given to Defendant, the United States contends that they were not inadequate
12 under the caselaw. *Id*. Finally, the United States contends that the *Miranda* rights read to Defendant
13 by Officer Jackson were not stale less than three hours later when Detective Hodson began speaking
14 with Defendant and, therefore, Detective Hodson did not need to refresh the warnings. *Id*. at 11.

15 Defendant replies that Officer Jackson read 47 words during a period of eight seconds and
16 fumbled some of the words. Docket No. 36 at 4. In any event, Defendant submits, the card Officer
17 Jackson used to read Defendant his *Miranda* rights was last revised in December 1996 and,
18 therefore, fails to contain necessary language regarding the right to the presence of an attorney during
19 questioning. *Id*. at 3-4.

20 Interrogation initiated by law enforcement officers after a suspect "has been taken into
21 custody or otherwise deprived of his freedom of action in any significant way" must be preceded by
22 *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *accord United States v. Wilson*,
23 666 F.2d 1241, 1246 (9th Cir. 1982). "In order to combat [the pressures inherent in custodial
24 interrogation] and to permit a full opportunity to exercise the privilege against self-incrimination,
25 the accused must be adequately and effectively apprised of his rights." *United States v. Williams*,
26 435 F.3d 1148, 1151 (9th Cir. 2006) (quoting *Miranda*, 384 U.S. at 467).

27 The "touchstone" for *Miranda* warnings is whether the suspect is in custody when
28 interrogated. *United States v. Barnes*, 713 F.3d 1200, 1205 (9th Cir. 2013) (citing *Rhode Island v.*

1  *Innis*, 446 U.S. 291, 300 (1980)).  To determine whether an individual was in custody, the Court
2  must examine the totality of the circumstances. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995).
3  The test is whether "a reasonable innocent person in such circumstances would conclude after brief
4  questioning [that] he or she would not be free to leave." *United States v. Bassignani*, 575 F.3d 879,
5  883-84 (9th Cir. 2009) (quoting *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir.1981)).  A
6  *Miranda* warning functions both to reduce the risk that an involuntary or coerced statement will be
7  admitted at trial and to implement the Fifth Amendment's self-incrimination clause.  *Id*. at 1151.
8  Thus, if a suspect in custody does not receive an adequate warning effectively apprising him of his
9  rights before he incriminates himself, his statements may not be admitted as evidence against him.
10 *Id*. at 1152.  In determining whether a suspect was in custody, "the ultimate inquiry is simply
11 whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated
12 with formal arrest."  *Stansbury v. California*, 511 U.S. 318, 322 (1994) (*quoting California v.*
13 *Beheler*, 463 U.S. 1121, 1125 (1983)).

14 The Supreme Court has never dictated the exact language to be used in giving any part of the
15 Miranda warning.  *Florida v. Powell*, 559 U.S. 50, 60 (2010).  Any wording will do so long as it
16 reasonably conveys the essential message.  *Id*.  Courts are thus not required to examine the words
17 used "as if construing a will or defining the terms of an easement."  *Id*. (quoting *Duckworth v.*
18 *Eagan*, 492 U.S. 195, 201 (1989)).  Further, the entire warning will be viewed in context to
19 determine whether it complies with *Miranda*.  *Id*. at 60-61.

20 In *Powell*, for example, the Supreme Court held that the following warning complied with
21 *Miranda* even though it failed to explicitly state that the suspect could have an attorney present
22 during questioning: "You have the right to remain silent.  If you give up the right to remain silent,
23 anything you say can be used against you in court.  You have the right to talk to a lawyer before
24 answering any of our questions.  If you cannot afford to hire a lawyer, one will be appointed for you
25 without cost and before any questioning.  You have the right to use any of these rights at any time
26 you want during this interview." *Id*. at 54.  The Court focused its attention on whether anything in
27 the warning "'suggested any limitation on the right to the presence of appointed counsel different
28 from the clearly conveyed rights to a lawyer in general, including the right to a lawyer before [the

suspect is] questioned, ... while [he is] being questioned, and all during the questioning.' " *Id*. at 61 (quoting *California v. Prysock*, 453 U.S. 355, 360–361 (1981) (*per curium*))   The Court explained that, to find the warning insufficient,

> the suspect would have to imagine an unlikely scenario: To consult counsel, he would be obliged to exit and reenter the interrogation room between each query. A reasonable suspect in a custodial setting who has just been read his rights, we believe, would not come to the counterintuitive conclusion that he is obligated, or allowed, to hop in and out of the holding area to seek his attorney's advice. Instead, the suspect would likely assume that he must stay put in the interrogation room and that his lawyer would be there with him the entire time.

*Id*. at 62-63.  *See also United States v. Warren*, 642 F.3d 182 (3d Cir. 2011) (lack of express reference to right to counsel during interrogation did not make *Miranda* warning insufficient).

"Waivers of *Miranda* rights need not be explicit; a suspect may impliedly waive the rights by answering an officer's questions after receiving *Miranda* warnings."   *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1127 (9th Cir.) amended, 416 F.3d 939 (9th Cir. 2005).  "For a waiver of rights to be valid it must be voluntarily, knowingly, and intelligently given. Whether there has been a valid waiver depends on the totality of the circumstances, including the background, experience, and conduct of defendant."  *United States v. Doe*, 155 F.3d 1070, 1074 (9th Cir. 1998) (en banc) (internal quotation marks and citations omitted).   "A waiver is knowing and intelligent if, under the totality of the circumstances, it is made with a 'full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Doe*, 155 F.3d at 1074 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Further, the government bears the burden of proving a confession is voluntary by a preponderance of the evidence. *United States v. Jenkins*, 958 F.2d 934, 937 (9th Cir. 1991) (citing *Lego v. Twomey*, 404 U.S. 477, 489 (1972)); *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). A voluntary statement is "one that is the product of a rational intellect and free will." *United States v. Kelley*, 953 F.2d 562, 564 (9th Cir. 1992), *overruled on other grounds by United States v. Dearing,* 9 F.3d 1428 (9th Cir. 1993) (citing *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960)). "In evaluating voluntariness, the 'test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the

1  suspect's will was overborne." *United States v. Male Juvenile,* 280 F.3d 1008, 1022 (9th Cir. 2002)
2  (citing *Derrick,* 924 F.2d at 817); *Dickerson v. United States,* 530 U.S. 428, 434 (2000).

3        Finally, the Supreme Court "has eschewed *per se* rules mandating that a suspect be re-advised
4  of his [*Miranda*] rights in certain fixed situations in favor of a more flexible approach focusing on
5  the totality of the circumstances." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1128 (9th
6  Cir.) amended, 416 F.3d 939 (9th Cir. 2005). *See Wyrick v. Fields*, 459 U.S. 42, 48-49 (1982) (*per
7  curiam*) (rejecting *per se* rule requiring police to re-advise suspect of his rights before questioning
8  him about results of polygraph examination). "A rewarning is not required simply because there is
9  a break in questioning," particularly where no intervening events have occurred which might have
10 given a defendant the impression that his rights had changed in a material way. *Rodriguez-Preciado*,
11 399 F.3d at 1129. The Ninth Circuit has generally rejected a *per se* rule as to when a suspect must
12 be readvised of his rights after the passage of time or a change in questioners. *United States v.
13 Andaverde*, 64 F.3d 1305, 1312 (9th Cir. 1995). The Ninth Circuit has upheld the admissibility of
14 statements made sixteen hours after *Miranda* warnings were administered. *See Rodriguez-Preciado*,
15 399 F.3d at 1129. See also *Guam v. Dela Pena*, 72 F.3d 767, 770 (9th Cir. 1995) (statement made
16 fifteen hours after administration of *Miranda* warnings admissible); *Puplampu v. United States*, 422
17 F.2d 870 (9th Cir. 1970) (*per curiam*)(two-day interval between warning and statement).

18       Here, the Court finds that the *Miranda* warning given to Defendant was sufficient. The
19 Court, in watching the body cam video, was able to make out all the words said by Officer Jackson.
20 Further, pursuant to the Supreme Court's decision in *Powell*, the Court finds that telling Defendant
21 that, if he could not afford an attorney, one would be appointed before questioning sufficiently
22 informed him of his right to have an attorney with him during questioning.

23       The facts presented by the parties clearly demonstrate that Defendant understood the rights
24 read to him and voluntarily spoke to both Officer Jackson and Detective Hodson. Defendant
25 affirmatively acknowledged that he understood his rights, and began speaking with both law
26 enforcement officers without hesitation. Under the totality of the circumstances, the Court finds that
27 Defendant made his statements with with a "full awareness of both the nature of the right being
28 abandoned and the consequences of the decision to abandon it." *Doe*, 155 F.3d at 1074. Finally, the

1 Court finds that Detective Hodson, who spoke with Defendant on the scene less than three hours
2 after Officer Jackson apprised Defendant of his *Miranda* rights, did not need to "refresh" the rights.
3 No intervening events occurred between Officer Jackson's warnings and Detective Hodson's contact
4 with Defendant that would have made him believe his circumstances had changed. Before speaking
5 with him, Detective Jackson confirmed with Defendant that he had received his *Miranda* rights and
6 that he wished to speak.

**ORDER**

Based on the foregoing and good cause appearing therefore,

IT IS HEREBY ORDERED that Defendant's request for an evidentiary hearing is **DENIED**.

**RECOMMENDATION**

Based on the foregoing and good cause appearing therefore,

IT IS RECOMMENDED that Defendant's Motion to Suppress Evidence (Docket No. 26) be **DENIED**.

DATED this 14th day of March, 2016.

_____
NANCY J. KOPPE
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).